**INTERNATIONAL THERAPEUTICS, INC., Plaintiff-Appellee,**

v.

**McGRAW–EDISON COMPANY, Defendant-Appellant.**

No. 82–1257.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1983.

Rehearing Denied Jan. 27, 1984.

---

Michael Prince, Richard A. Sayles, Dallas, Tex., for defendant-appellant.

**490**

Lockman & Line, David K. Line, Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

In this Texas diversity action International Therapeutics, Inc. (Therapeutics) sought damages from McGraw-Edison Company (McGraw) for breach of contract. After submission on special interrogatories, the jury found that as of April 22, 1976, Therapeutics and McGraw had a course of dealing which McGraw terminated without reasonable notice, causing damages to Therapeutics of $60,000. The district court denied McGraw's motion for judgment n.o.v. Concluding that the record contains inadequate evidence to support the jury's finding of a course of dealing between the parties as of April 22, 1976, we reverse and render judgment in favor of McGraw.

### Facts

In 1972, McGraw acquired the G.W. Murphy Tool Co. which was manufacturing a medical device known as a mechanical percussor. The percussors were used in the treatment of individuals suffering with asthma, cystic fibrosis and other pulmonary diseases, and were composed of an outer casing, produced from a mold provided by Therapeutics, and an interior mechanism which was part of a sabre saw. Murphy began selling the percussors to Therapeutics in 1970. When McGraw acquired Murphy, it continued this sales arrangement.

Under their verbal agreement, McGraw received periodic forecasts of Therapeutics' needs and manufactured percussors in anticipation of those needs. Therapeutics placed specific purchase orders from time to time. No advance payment or prior security was required of Therapeutics. Instead, it was merely obliged to pay within 30 to 90 days of receipt of the goods, occasionally receiving a discount for payment within ten days.

The agreement was honored until the latter part of 1975 when business relations between the parties began to deteriorate. By December, Therapeutics was seriously in arrears. Purchase order payments had not been made within the traditional 30 to 90 day period; indeed, Therapeutics had failed to make payment for more than 200 days. On December 12, 1975, McGraw gave Therapeutics written notice that it would not ship the pending orders until it received Therapeutics' financial statement. Therapeutics failed to submit the required statement. On January 16, 1976, McGraw wrote Therapeutics advising that because of its failure to provide the financial information, all outstanding purchase orders were being canceled.

The letter of January 16, 1976, presaged by the letter of December 12, 1975, ended the contractual arrangement between McGraw and Therapeutics. When the parties resumed business activity in February, the scenario had changed. McGraw required the posting of a letter of credit and required payment in advance before accepting and shipping new orders. The prepayment requirement was to continue until the delinquent balance was paid in full.

By March 1976, Therapeutics was aware of production changes at McGraw, understood that McGraw had only a limited number of units in inventory, and was aware of McGraw's position that the sale of subsequently manufactured units would be subject to significantly different contractual provisions including a higher unit price. Discussions were undertaken. By letter dated April 22, 1976, McGraw informed Therapeutics that it would enter into subsequent sales only if Therapeutics agreed in writing to specific conditions, including the purchase of 5,000 percussors annually, with a guaranteed quarterly purchase of 1,250 units, an increased unit price which was to be payable in 60 days, and Therapeutics' acquisition of insurance protection for McGraw. No agreement was reached. Therapeutics filed the instant action claiming that by the letter of April 22, 1976

McGraw had terminated the contractual relationship then existing between them without giving reasonable notice. Specifically, Therapeutics claimed that from 1970 until April 22, 1976 McGraw was contractually bound by a course of dealing to provide Therapeutics with an indefinite supply of percussors. Therapeutics contended that McGraw's termination without notice caused it to lose profits.

▆ Several issues are presented on appeal but only one need be addressed, the threshold issue whether the record contains evidence of a course of dealing extant on April 22, 1976, sufficient to support the jury's verdict. The standard against which we measure the evidence was announced in *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of

the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

### Analysis

▆ The Uniform Commercial Code (UCC), adopted in Texas as the Business and Commerce Code of Texas, recognizes that parties may form contracts by formal offer and acceptance or by conduct which implicitly establishes a contractual relationship. Such conduct includes the parties' "course of dealing" which is defined by UCC § 1–205(1):[1]

> A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

The emphasis is on a sequence of events; a single transaction cannot constitute a course of dealing.

Contracts may be for a stated period or may be indefinite. UCC § 2–309(2)[2] provides for the duration of the latter:

> Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

Under § 2–309(3)[3] this termination "requires that reasonable notification be received by the other party."

▆ In addition to mutual dissolution, the UCC envisions two separate and discrete methods for bringing a contract to an end, termination and cancellation. In defining the two in § 2–106,[4] the UCC underscores the critical distinction:

> (c) "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach.

1. Tex.Bus. & Comm.Code § 1.205(a).

2. Tex.Bus. & Comm.Code § 2.309(b).

3. Tex.Bus. & Comm.Code § 2.309(c).

4. Tex.Bus. & Comm.Code § 2.106(c) & (d).

(d) "Cancellation" occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of "termination" . . . .

Breach, or the absence thereof, is the essential difference.

Cancellation is one of the remedies available to a seller under § 2–703,[5] which provides that whenever "the buyer . . . fails to make a payment due . . . or repudiates [the contract] . . . the aggrieved seller may . . . cancel." A termination under § 2–309(2) requires reasonable notice, a cancellation under § 2–703 does not. The Code is silent as to notice in the instance of cancellation. The reason is obvious; an aggrieved seller dealing with a buyer who is in breach of their contract should not normally be obliged to put the delinquent buyer on notice before terminating future relations.

Although there is no plethora of authority on the subject, the distinction between termination and cancellation has been recognized in Texas and in other jurisdictions. *See KLT Industries, Inc. v. Eaton Corp.,* 505 F.Supp. 1072 (E.D.Mich.1981); *Frigiking, Inc. v. Century Tire & Sales Co.,* 452 F.Supp. 935 (N.D.Tex.1978); *Louis Sherry Ice Cream Co. v. Harlem River Consumers Cooperative,* 18 U.C.C.Rep.Serv. 97 (N.Y. Civ.Ct.1975).

Applying the *Boeing v. Shipman* standard and evaluating the facts of record against the UCC provisions on termination and cancellation, we are persuaded that on April 22, 1976, there was no course of dealing between the parties which would entitle Therapeutics to claim a contractual right to acquire percussors from McGraw upon simple forecast and tender of a purchase order. From 1970 until December 1975, Therapeutics enjoyed a course of dealing with McGraw and its predecessor which entitled it to purchase shipments of percussors upon demand. Therapeutics forfeited that position by failing to make timely payment. UCC § 2–703. Additionally, Therapeutics repudiated the contract by failing to furnish the financial data requested by McGraw by its letter of December 12, 1975. Under the Code, a buyer is obliged to furnish assurance of payment when requested to do so, whenever "reasonable grounds for insecurity [exists] with respect to the performance." § 2–609(1).[6] Failure to do so "is a repudiation of the contract." § 2–609(4). When the buyer repudiates, the seller may cancel. § 2–703.

The existing contractual relationship between McGraw and Therapeutics came to an end on January 16, 1976. The sporadic dealings between the parties thereafter are insufficient to establish any course of dealing which would entitle Therapeutics to relief. Accordingly, the jury's verdict is without adequate support.

The judgment of the district court is REVERSED and judgment is RENDERED in favor of McGraw, rejecting Therapeutics' demands.

---

5. Tex.Bus. & Comm.Code § 2.703.

6. Tex.Bus. & Comm.Code § 2.609.