519 A.2d 385

**Glenn C. HUTCHISON and Virginia Hutchison, his wife, Appellees,**

v.

**SUNBEAM COAL CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1986.

Decided Dec. 16, 1986.

194

Leo M. Stepanian, Stepanian & Muscatello, Thomas W. King, III, Dillon, McCandless & King, Butler, for appellant.

Charles E. Gutshall, Baskin Flaherty Elliott & Mannino, P.C., Philadelphia, for amicus curiae Pennsylvania Coal Mining Ass'n.

Henry Ingram, Thomas C. Reed, Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, for amicus curiae Keystone Bituminous Coal.

Peter H. Shaffer, Butler, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellant, Sunbeam Coal Corporation, appeals by allowance Superior Court's order reversing Butler County Com-

mon Pleas.  349 Pa.Super. 625, 503 A.2d 54.  Common Pleas had denied appellees relief in their suit for a declaratory judgment.  The court construed a coal "lease" they had granted appellant to continue as long as appellant paid minimum advance royalties to appellees, Glenn and Virginia Hutchison.[1]  As stated, Superior Court reversed Common Pleas, holding the lease had expired.  The court reasoned that such leases contain an implied duty to mine diligently which appellant Sunbeam breached.  Superior Court erred in implying a general covenant to mine into coal leases which provide for minimum advance royalties.  Nevertheless, Superior Court correctly held that the term of this particular lease had expired.  Therefore, we affirm.

Appellees, Glenn and Virginia Hutchison, are the owners of 85 acres of land in Oakland Township, Butler County.  On December 14, 1976, they executed an "Option and Lease Agreement" with appellant Sunbeam Coal Corporation.  The agreement provided, *inter alia,* for the payment of minimum advance royalties for at least three years should Sunbeam choose not to actively engage in the extraction of coal from the demised property.  The parties differ over whether the three year term is a minimum term during which appellant coal company cannot terminate without payment of royalties or a maximum term during which the lease will continue in the absence of mining.  In the event mining operations should commence, the agreement provides that Sunbeam is to pay to the landowner royalties in the amount of one ($1.00) dollar per net ton (2,000 pounds) of coal removed.  The agreement gave the coal company an option to enter into a lease for the purpose of extracting the coal in place under appellees' land pursuant to terms and conditions also set forth in the December 14, 1976 agree-

---

1. The term "lease" is in some respects a misnomer.  What is really involved is a transfer of an interest in real estate, the mineral in place. *Hummel v. McFadden,* 395 Pa. 543, 552, 150 A.2d 856, 860 (1959); *Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 186–87, 79 A.2d 433, 436, *cert. denied,* 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621 (1951).  Common Pleas' construction gives the transfer involved the characteristics of a fee simple determinable in the coal, which the lease severs from appellees' interest in the surface.

ment. Appellant made a timely exercise of its option on June 1, 1977 and began paying minimum royalties on September 1, 1977. The Hutchisons received and cashed minimum advance royalty checks covering royalties due through December, 1979, three years after the signing of the document.[2] Contending the lease had then expired, the landowners refused minimum advance royalty checks tendered after January of 1980 because no mining had begun.

Appellees then sought declaratory relief, pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, and asked Butler County Common Pleas to declare that the lease had terminated three years after the execution of the document. Appellee Glenn Hutchison, Homer Rodgers, leasing agent for the Sunbeam Coal Corporation, and Attorney Leo Stepanian, drafter of the lease for Sunbeam, all testified before Common Pleas as to the meaning of the document and the circumstances attendant to its execution. The court examined the lease and stated that appellee Hutchison had simply misinterpreted the express provisions of the lease. It held that as long as Sunbeam tendered minimum advance royalty payments the lease would continue. Superior Court reversed. We granted a petition for allowance of appeal to resolve the debate surrounding the terms of the lease and to examine the Superior Court decision in *Frenchak v. Sunbeam Coal Corp.*, 344 Pa.Supe-

2. The document is ambiguous on its face as to when the three year period begins and ends, whatever purpose that period serves. Paragraph 5 (quoted in its entirety *infra*, at 389) of the document states, "This lease shall continue for a period of 3 years from the effective date hereof." The document itself is both a lease and an option. This leads to at least three possible interpretations of the phrase "effective date *hereof*" (emphasis added): (a) the lease terminates December 14, 1976, three years after execution of the lease-option document; (b) the lease terminates June 1, 1980, three years after exercise of the option; (c) the lease terminates September 1, 1980, three years after paragraph three's grace period for commencement of mining ends. The parties have argued only the question of whether three years measures the term of the lease or the time during which appellant must pay royalties. Either way, it leaves the beginning and end of the stated period uncertain. We need not address this issue, however, as our affirming Superior Court's holding that the lease term is only three years and not perpetual relieves us of the duty to construe the effective date of the lease term.

rior Ct. 37, 495 A.2d 1385 (1985), implying a covenant to mine despite the payment of minimum advance royalties.

■ The *Frenchak v. Sunbeam Coal Corp.* decision, upon which Superior Court relied in the instant case, interpreted a lease document with the same language as the one here to give rise to a forfeiture favoring the landowner. Citing the landowner's inability to develop the demised property when burdened with a mineral lease, and the "stop-gap" nature of minimum advance royalties, the court held that "the law will imply a duty to mine, even in the face of minimum advance royalties." 344 Pa.Superior Ct. at 42, 495 A.2d at 1388. In this respect, Superior Court erred. In letting land for the extraction of minerals, an obligation to pay minimum advance royalties does not create an implied duty to mine under Pennsylvania law. We have never implied such a duty and decline to do so now.

In coal mining leases, where the consideration for the privilege of removing the mineral is a royalty on the amount extracted, it is common for the parties to stipulate that a minimum advance royalty will be paid to the landowner if no mining is done. *See generally Lacoe v. Lehigh Valley Coal Co.*, 290 Pa. 495, 139 A. 140 (1927). In *Hummel v. McFadden*, 395 Pa. 543, 150 A.2d 856 (1956), this Court implied a duty to mine in a lease agreement which did not provide for minimum royalties in the absence of mining. There, the implied covenant imposed upon the mining company a duty to commence operations in order to provide the landowner some return on his agreement. Our holding in *Hummel* leaves the contracting parties free to bargain for a provision addressing the amount and type of consideration to be paid in lieu of forfeiture should the mining company fail to commence mining operations. Pennsylvania courts have reasoned that minimum advance royalties are in the nature of liquidated damages for the lessee's failure to mine. *Pittsburgh National Bank v. Allison Engineering Co.*, 279 Pa.Superior Ct. 442, 447, 421 A.2d 281, 284 (1980); *Muir v. Thompson Coal Co.*, 209 Pa.Superior Ct. 432, 435, 229 A.2d 480, 481 (1967); *Greenough v. Colonial Colliery*

*Co.,* 132 Pa.Superior Ct. 270, 275, 1 A.2d 174, 176 (1938) (citing cases). Such reasoning recognizes minimum advance royalties as the consideration flowing from the coal company to the landowner in lieu of the tonnage royalties which would be paid if mining operations were undertaken. Implying a duty to mine in the face of a minimum advance royalty clause ignores the terms agreed to by the contracting parties.[3]

■ The law will not imply a different contract than that which the parties have expressly adopted. To imply covenants on matters specifically addressed in the contract itself would violate this doctrine. *Greek v. Wylie,* 266 Pa. 18, 23, 109 A. 529, 530 (1920); *Reading Terminal Merchants Ass'n. v. Samuel Rappaport Assoc.,* 310 Pa.Superior Ct. 165, 176, 456 A.2d 552, 557 (1983). *See also* 11 *Williston on Contracts* § 1295 (3d ed. 1968) (implied term justifiable only when not inconsistent with express terms of contract and absolutely necessary to effectuate intent of parties). In *Hummel v. McFadden, supra,* the consideration flowing to the lessor was the expected receipt of tonnage royalties. Under that lease, the absence of a covenant to mine would have left the landowner without any consideration for his grant of the right to mine. In the present case, the parties have expressly agreed that minimum advance royalty payments of $420.00 per year shall be paid to the lessor if the lessee fails to work the mine. Therefore, during the lease term, whatever that term may be, there is no failure of consideration in the absence of mining and it is not necessary to imply a covenant to mine. The contracting parties themselves have dealt expressly

**3.** This approach is followed in a number of jurisdictions. *Inman v. Milwhite,* 402 F.2d 122 (8th Cir.1968); *Higginbottom v. Thiele Kaolin Co.,* 251 Ga. 148, 304 S.E.2d 365 (1983); *Burnett Coal Mining Co. v. Schrepferman,* 77 Ind.App. 45, 133 N.E. 34 (1921); *Continental Fuel Co. v. Haden,* 182 Ky. 8, 206 S.W. 8 (1918); *Olson v. Pedersen,* 194 Neb. 159, 231 N.W.2d 310 (1975); *Frierson v. International Agricultural Corp.,* 24 Tenn.App. 616, 148 S.W.2d 27 (1940); *Vitro Minerals Corp. v. Shoni Uranium Corp.,* 386 P.2d 938 (Wyo.1963).

with the possibility of a failure to mine by providing for minimum advance royalties.[4]

Alternately, Superior Court's opinion seems to imply that this particular lease is properly interpreted as a lease for a maximum term of three years in the absence of mining. Therefore, our rejection of that court's rationale based on an implied covenant to mine does not relieve us of our obligation to examine the terms of this particular agreement to determine whether the three year period limits only the coal company's obligation to pay minimum advance royalties, or, conversely, the term of the lease, in the absence of mining operations. The lease provides that the coal operator shall have 180 days after the execution of the document to exercise his option to lease the land. The coal operator also covenants it will commence mining within 90 days after the exercise of the option to lease and, in the event mining does not begin, the coal company agrees to pay the landowner $420.00 per year in minimum advance royalties. Paragraph five, the controverted provision, states:

> 5. This lease shall continue for a period of 3 years from the effective date hereof or until all the coal which the Coal Operator determines can be mined, removed and sold with economy and profit has been removed or so long as minimum advance royalties are being tendered by the Coal Operator. Coal Operator may remove all equipment, buildings and machinery from the premises at the end of the term provided no royalty is then due, or Coal Operator may leave the same on the premises for a period of six months at its option.

The lease is a standard typewritten form drafted by the coal company and apparently utilized by it in all similar dealings. In this particular paragraph the only term negotiated by the

4. The parties to a mineral lease are free, of course, to bargain for a duty to mine in addition to the payment of minimum advance royalties. *See Chauvenet v. Person,* 217 Pa. 464, 66 A. 855 (1907) (lease containing express provision mandating a forfeiture after one year of inactivity despite the payment of minimum advance royalties).

parties is the provision for three years which was inserted in a blank left vacant on the form.

Paragraph five raises difficult problems of construction for a court attempting to discern the parties' intent as to the lease's term when no mining operations have occurred. Appellant Sunbeam's interpretation of the express language in paragraph five would grant it an estate in perpetuity, a fee simple in the mineral in place, not determinable so long as Sunbeam tenders minimum advance royalties to the landowner. The landowners contend that such a construction would make the reference to three years a nullity. Superior Court determined that the lease provision contemplates termination upon the happening of any one of three conditions: the expiration of three years, the coal operator's determination that continuation of coal mining is no longer financially expedient or the cessation of minimum advance royalties. We agree with the result reached by Superior Court, not because of any implied covenant to mine, but because the lease on its face is ambiguous as to its term and the other available evidence favors appellees' interpretation.

■ A lease is a contract and is to be interpreted according to contract principles. *Pugh v. Holmes,* 486 Pa. 272, 284, 405 A.2d 897, 903 (1979). Determining the intention of the parties is a paramount consideration in the interpretation of any contract. *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 143, 302 A.2d 347, 351 (1973); *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. *Steuart v. McChesney,* 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982); *In re Estate of Breyer,* 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977). However, as this Court stated in *Herr Estate,* 400 Pa. 90, 161 A.2d 32 (1960), "where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or

collateral circumstances." *Id.*, 400 Pa. at 94, 161 A.2d at 34.

■ We first analyze the lease to determine whether an ambiguity exists requiring the use of extrinsic evidence. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Metzger v. Clifford Realty Corp.*, 327 Pa.Superior Ct. 377, 386, 476 A.2d 1, 5 (1984); *Commonwealth State Highway and Bridge Authority v. E.J. Albrecht Co.*, 59 Pa.Commonwealth Ct. 246, 251, 430 A.2d 328, 330 (1981). *See also Black's Law Dictionary* 73 (Rev. 5th ed. 1979). The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact. *Easton v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.2d 332 (1957); *Fischer & Porter Co. v. Porter*, 364 Pa. 495, 72 A.2d 98 (1950). *See generally* 4 Williston on Contracts § 616 (3d ed. 1961).

■ In the case *sub judice*, paragraph five of the lease could arguably be interpreted as appellant urges. So construed, the payment of $420.00 per year in minimum advance royalties would indefinitely extend the lease term. However, this interpretation brings the first measure of the term, three years, into conflict with the third, "so long as minimum royalties are paid." Appellant's argument that this conflict can be resolved by treating the period in gross as merely a limitation on its obligation to pay minimum advance royalties is at best strained and rests wholly on the use of the word "or" to connect the series of events which describe the term. It is also inconsistent with the plain purpose of the paragraph in question, *i.e.*, to describe and delimit the term of the lease, not the term during which minimum advance royalties should be paid. Alternatively, paragraph five can be interpreted to reflect the appellees' construction that minimum advance royalties are to be paid, following the failure to commence mining within 90 days of the coal operator's exercise of the option, but that the lease

expires three years after the option is exercised unless mining has then begun. This interpretation is not totally consistent with the use of the word "or," but seems more natural. In any event, since the provisions of paragraph five are reasonably susceptible to two interpretations, it is ambiguous and we must look at the extrinsic evidence.[5]

■ So doing, we are persuaded, as a matter of interpretation, that the parties intended to limit the lease term to three years after the first payment of minimum advance royalties unless mining had commenced in the meantime.[6] Homer Rodgers, then leasing agent for Sunbeam Coal,

5. The resolution of this matter implicates two well-settled rules of construction. First, in determining the intention of parties to a written contract, the writing must be construed against the party drafting the document. *Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986); *Central Transportation, Inc. v. Board of Assessment Appeals of Cambria County,* 490 Pa. 486, 496, 417 A.2d 144, 149 (1980); *Burns Manufacturing Co. v. Boehm,* 467 Pa. 307, 313 n. 3, 356 A.2d 763, 766 n. 3 (1976); Restatement (Second) of Contracts § 206 (1981). Second, a lease will not be construed to create a perpetual term unless the intention is expressed in clear and unequivocal terms. *Sterle v. Galiardi Coal & Coke Co.,* 168 Pa.Superior Ct. 254, 257–258, 77 A.2d 669, 672 (1951); W. Burby, *Real Property* § 68 at 159–160 (1965). Rules of construction do not relieve a court of the obligation to inquire into the circumstances surrounding the execution of the document. As stated in *Burns Manufacturing Co. v. Boehm, supra,* "[r]ules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of parties to an instrument. They are not meant to be applied as a substitute for that quest." 467 Pa. at 313 n. 3, 356 A.2d at 766 n. 3. Our first obligation is to examine the extrinsic evidence and resort to rules of construction only should that examination prove fruitless.

6. As noted *supra,* generally it is the court's responsibility to determine the existence of an ambiguity leaving the resolution of the ambiguity and the determination of the parties' intent to the finder of fact. In this case, a hearing was held before Common Pleas where both parties proffered their interpretation of the lease agreement. However, in deciding that the lease is perpetual on the continued payment of minimum advance royalties, Common Pleas simply relied upon the express terms of the lease making no findings on the evidence adduced at the hearing. We need not remand this matter for further findings as the record is clear on these facts. An appellate court may draw its own inferences and arrive at its own conclusions when a finding of fact is simply a deduction from other facts and the ultimate fact in question is purely a result of reasoning. *Frowen v. Blank,* 493 Pa. 137, 142, 425 A.2d 412, 415 (1981); *Estate of McKinley,* 461 Pa. 731, 734 n. 1, 337 A.2d 851, 853 n. 1 (1975).

testified as follows about the circumstances surrounding the insertion of the three year term into the blank space in paragraph five:

Q. And is it correct to say in this case you told Mr. Hutchison that a five year term was the normal term?

A. This is approximately what we do with all of them, approximately five.

Q. What was his response to that?

A. He would like to have it for three years.

Q. Then, what did you say?

A. I said that I would check with Sunbeam and see if we could do it on a three year period and which I did and came back and—

Q. Let me just interrupt you. When you checked with Sunbeam, who did you check with?

A. Mr. Harger.

Q. And what did you say to Mr. Harger about this blank space that needed to be filled in?

A. I said, "On paragraph five, Mr. Harger, can we go for a period of three years instead of five years on that?" Mr. Harger—

Q. What was his response?

A. He thought for a little bit and he said, "Yes, we can go for three years on that."

N.T. February 9, 1983 at 31–32.

The need to consult with a superior at Sunbeam points strongly to the parties' shared intent to treat the term in gross as a limit on the length of the demise to the coal company. If the lease could be extended in perpetuity through the payment of minimum advance royalties, there would be little need for the leasing agent, Mr. Rodgers, to seek approval before the insertion of a three year term in paragraph five.

The order of Superior Court is affirmed.

McDERMOTT, J., did not participate in the consideration or decision of this case.

NIX, C.J., concurs in the result.