**DESIGNS BY SKAFFLES, INC.,**
**Plaintiff–Appellee,**

v.

**THE NEW L & N SALES AND MARKETING, INC., Defendant–Appellant.**

Nos. 01–1264, 01–1450.

United States Court of Appeals, Federal Circuit.

Decided April 16, 2002.

April 17, 2002.

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

This is an appeal by The New L & N Sales and Marketing, Inc. ("L & N") from the district court's grant of summary judgment to Designs by Skaffles, Inc. ("Skaffles"). Skaffles filed a declaratory judgment action against L & N seeking a determination that a certain agreement executed in 1999 between L & N and Rommy Revson ("Revson") containing a covenant not to sue barred L & N from suing Skaffles for allegedly infringing U.S. Design Patent No. 292,030 ("the '030 patent"). L & N counterclaimed for patent infringement. The district court granted partial declaratory relief to Skaffles, holding that the agreement precluded L & N from seeking damages for infringement prior to February 1, 1999. *Designs by Skaffles, Inc. v. The New L & N Sales and Marketing, Inc.*, No. 99–CV–1056 (S.D.N.Y. Feb.13, 2001) (order granting summary judgment). Because the district court erred in granting summary judgment, we *reverse* the judgment and *remand* the case to the district court for further proceedings.

## BACKGROUND

The '030 patent, issued to Revson, covers a particular toroidal (*i.e.* "donut-shaped"), fabric-covered ponytail holder with an irregular ruffled surface, popularly known as a "scrunchie." *See* Figs. 1 and 2. Revson also holds U.S. Design Patent No. 356,393 ("the '393 patent"), which covers a ponytail holder referred to as a "Rommy III." The Rommy III has a thin section on one side and a thicker section on the other side, giving it a shape somewhat like a small handbag. *See* Figs. 3 and 4.

Fig. 1

Fig. 2

Fig. 3

Fig. 4

On February 11, 1993, Revson and L & N entered into an agreement (the "License Agreement") that licensed L & N to make scrunchies and sell them (i) exclusively to certain identified retail and department stores throughout the United States, and (ii) non-exclusively to other stores. On February 2, 1999, to settle a dispute that arose between L & N and Revson as to the meaning of the License Agreement, the parties entered into another agreement (the "1999 Agreement") that provided, in pertinent parts:

(1) *The License Agreement.* The License Agreement, as amended herein, is ratified, confirmed and approved.

.   .   .   .   .

(4) *Provisions Relating to License Agreement*

.   .   .   .   .

(D) Paragraph 1.d of Section C [of the License Agreement] is deleted in its entirety and the following is substituted therefor:

.   .   .   .   .

(iv) in addition, L & N covenants not to sue the Existing Rommy III Licensees for infringement of the '030 Patent on account of sales of a purported Rommy III product when manufactured exactly as depicted in Exhibit I, or closer in appearance to the patent drawings for the Rommy III, and packaged and sold only in either one or two pieces per package, such packaging to be exactly of the type depicted in Exhibit II (other than color, brand or

paper type) or such packaging which displays the design differences between the '030 Patent and [the '393] Patent more prominently than in Exhibit II to this Settlement Agreement. L & N covenants not to sue [Skaffles] for infringement of the '030 Patent on account of sales of a purported Rommy III product when manufactured, packaged and sold as set forth in Exhibit III.A and III.B to this Settlement Agreement. . . .

(v) Nothing contained herein shall be deemed or construed in any manner to constitute an acknowledgment or admission by L & N that the purported Rommy III products identified on Exhibits I through IV do not infringe the '030 Patent. Furthermore, *this covenant not to sue* shall be strictly construed as limited to the specific products identified in the exhibits to this Settlement Agreement and *does not limit or preclude L & N from taking such action as it deems appropriate to enjoin and seek damages for infringement or otherwise on account of the manufacture and sale after February 1, 1999,* of any variation or deviation whatsoever from the exhibits to this Settlement Agreement. . . .

(Emphasis added to indicate disputed language.)

By letter to Skaffles dated February 8, 1999, L & N expressed its belief that certain products Skaffles was selling infringed the '030 patent because they did not satisfy the conditions of the covenant not to sue in the 1999 Agreement. In response, Skaffles filed the present action in the Southern District of New York seeking, *inter alia,* a declaratory judgment that the covenant not to sue completely barred L & N from suing Skaffles for manufacturing, selling, or shipping any of the products identified in L & N's letter. L & N counterclaims against Skaffles for patent infringement of the '030 patent. Following discovery, the parties cross-moved for summary judgment on this issue.

The district court granted Skaffles partial declaratory relief by essentially ruling that although the covenant not to sue did not bar L & N from suing Skaffles for infringement of the '030 patent, it did preclude L & N from recovering damages arising from Skaffles' sales of allegedly infringing products prior to February 1, 1999. The district court stated that its ruling was compelled "by the clear language of the 1999 Agreement." The district court's summary judgment order thus precluded L & N from recovering damages from Skaffles for any infringement of the '030 patent that took place prior to February 1, 1999.

Prior to the filing of this appeal, Revson in March 2000 commenced an action against L & N claiming that L & N did not have the right to pursue claims of patent infringement of the '030 patent that took place prior to February 1, 1999. Skaffles was not a party to that action and a related New York action. Revson and L & N settled that action by agreement dated April 24, 2000 (the "2000 Agreement"), which provided that (1) if the court in the Skaffles litigation, which is the case now on appeal before this Court, determined that L & N lacked standing in the infringement action against Skaffles without joinder of the patentee Revson; or (2) Skaffles offered or attempted to offer any evidence in the Skaffles litigation on the pre–1999 damages issue other than the License Agreement itself and the negotiations between the parties with respect to that issue leading to the 1999 Agreement,

then L & N had the right to introduce the 2000 Agreement in this litigation. The district court in this litigation held that L & N did not lack standing for failure to join Revson. Therefore, under the specific terms of the 2000 Agreement, L & N could not introduce that agreement in the Skaffles litigation at issue in this appeal.

L & N originally filed an appeal with this Court from the district court's order denying it damages prior to February 1, 1999, and granting it infringement damages after that date. The parties subsequently settled their claims with respect to infringing products sold after February 1, 1999. The court entered a final judgment in that portion of the case. L & N filed a second notice of appeal presenting once again the same issue, *i.e.*, damages prior to February 1, 1999. The two appeals have been consolidated. The only issue presented by the two appeals is the same: whether L & N may recover from Skaffles damages caused by Skaffles' manufacture or sale prior to February 2, 1999, of products that infringed the '030 patent but did not meet the conditions of the covenant not to sue in the 1999 Agreement.

## DISCUSSION

■ We review a grant of summary judgment *de novo*, by re-applying the summary judgment standard. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824, 49 USPQ2d 1865, 1869 (Fed. Cir.1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). That both parties moved for summary judgment does not mean that a court must grant judgment as a matter of law to one side or the other. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987). Because the interpretation of contracts such as license and settlement agreements is a legal issue, we review the

judgment of the district court *de novo*. See *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1466, 45 USPQ2d 1545, 1552–53 (Fed.Cir.1998); *see also Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1569, 27 USPQ2d 1136, 1138 (Fed. Cir.1993).

The License Agreement specifically provides that it should be construed in accordance with Pennsylvania law. The 1999 Agreement does not amend or otherwise modify the choice of law provision of the License Agreement, and neither party argues that any other law should be used to interpret the respective Agreements. In interpreting the Agreements we thus apply Pennsylvania law. We follow the law of contracts as interpreted by the highest state court in Pennsylvania.

The Supreme Court of Pennsylvania has held that "[d]etermining the intention of the parties is a paramount consideration in the interpretation of any contract." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200, 519 A.2d 385, 389 (1986); *see also Unit Vending Corp. v. Lacas*, 410 Pa. 614, 617, 190 A.2d 298, 300 (1963). When the terms of a written contract are clear and unambiguous, the intent of the parties is to be ascertained only from the express language of the document. *Hutchison*, 513 Pa. at 200, 519 A.2d at 390; *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982). However, if a contract "is reasonably susceptible of different constructions and capable of being understood in more than one sense," it is ambiguous. *Hutchison*, 513 Pa. at 201, 519 A.2d at 390. Whether an ambiguity exists is a matter of law. *Id.* at 201, 519 A.2d at 390. What the parties intended by an ambiguity is a question for the trier of fact. *Id.* at 201, 519 A.2d at 390; *Fischer & Porter Co. v. Porter*, 364 Pa. 495, 502, 72 A.2d 98, 102 (1950).

Paragraph 4(D)(v) of the 1999 Agreement clearly and unambiguously provides

that L & N's covenant not to sue Skaffles under Paragraph 4(D)(iv) applies to the manufacture or sale of allegedly infringing articles that took place after February 1, 1999, provided Skaffles met the conditions of the covenant not to sue. However, this issue is not before us, because the parties settled their differences regarding the infringement subsequent to February 1, 1999.

In contrast, neither Paragraphs 4(D)(iv) nor 4(D)(v) (nor any other part of the 1999 Agreement) directly address the issue of infringing acts that took place on or before February 1, 1999. Skaffles argues, and the district court apparently agreed, that the only reasonable interpretation of this silence is that L & N completely released Skaffles from liability for any manufacture or sale that took place on or before February 1, 1999. On the other hand, L & N contends that under the License Agreement, as amended by the 1999 Agreement, its right to sue for infringement of the '030 patent was without temporal limitation. Further, L & N contends that per Paragraph 4(D)(v) its covenant not to sue Skaffles was limited to Skaffles' acts after February 1, 1999, for those acts that fell outside the protected activity delineated by the conditions of the covenant not to sue as stated in Paragraph 4(D)(iv).

In light of the express temporal limitation of Paragraph 4(D)(v) on L & N's covenant not to sue Skaffles in Paragraph 4(D)(iv), the 1999 Agreement is not rendered "clear and unambiguous" by the silence of Paragraph 4(D)(v) and the remainder of the 1999 Agreement with respect to alleged infringements on or before February 1, 1999. Instead, the 1999 Agreement is reasonably susceptible to the differing constructions given it by Skaffles and L & N, and is capable of being understood in either sense. Therefore, it is ambiguous.

Determining the intention of the parties to such an ambiguous agreement is a question of fact not properly resolved on summary judgment.

Moreover, the ambiguity as to the intent of the parties relative to the 1999 Agreement must be resolved by the court without resort to the 2000 Agreement which is inadmissible in the remand proceedings pursuant to its terms. Skaffles did not offer "evidence" on the pre–1999 damages issue. Statements made by Skaffles' counsel during oral argument do not constitute "evidence."

## CONCLUSION

The district court erred by granting summary judgment that the 1999 Agreement precludes L & N from seeking damages from Skaffles for its allegedly infringing acts prior to February 1, 1999. We reverse that judgment and remand the case to the district court for proceedings not inconsistent with this opinion.

Each party shall bear its own costs.