J-A07022-21

2021 PA Super 118

| MARKET SQUARE PROPERTIES DEVELOPMENT, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TGRG, LLP AND THOMAS GRECO | : | |
| | : | No. 1186 MDA 2020 |
| Appellant | : | |
| | : | |
| THOMAS GRECO, T/A TGRG, LLP | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARKET SQUARE PROPERTIES DEVELOPMENT, LLC AND FOUR ONE COMPANY, LP | : | |

Appeal from the Order Entered September 11, 2020
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2016-13022,
2016-13038

_____

| MARKET SQUARE PROPERTIES DEVELOPMENT, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TGRG, LLP AND THOMAS GRECO | : | |
| | : | No. 1187 MDA 2020 |
| Appellant | : | |
| | : | |
| THOMAS GRECO, T/A TGRG, LLP | : | |
| | : | |
| Appellant | : | |
| | : | |

|  | : |
| --- | --- |
| v. | : |
|  | : |
| MARKET SQUARE PROPERTIES | : |
| DEVELOPMENT, LLC AND FOUR ONE | : |
| COMPANY, LP | : |

Appeal from the Order Entered September 11, 2020
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2016-13022,
2016-13038

BEFORE:    BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                                    **FILED JUNE 09, 2021**

Appellants, Thomas Greco and TGRG, LLP,[1] appeal from the order entered on September 11, 2020, in these declaratory judgment and quiet title actions.[2] Appellants challenge the trial court's finding that the lease restriction at issue does not encumber the property that Appellee, Market Square Properties Development, LLC,[3] owns. After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Thomas Greco is the sole proprietor of TGRG, LLP (collectively, "Appellants"). Appellants were the defendants in the quiet title action docketed in the Court of Common Pleas at No. 2016-13022. Appellants were the plaintiffs in the declaratory judgment action seeking an injunction docketed at 2016-13038.

[2] For ease of disposition, we have consolidated the appeals.

[3] Market Square Properties Development, LLC, ("Appellee") was the plaintiff named in the quiet title action docketed at No. 2016-13022. Appellee and Four One Company, LP, were the defendants named in the declaratory judgment action.

We derive the following factual and procedural history from the trial court opinion and certified record.[4]  Marvin Roth owned a large parcel of land in Wilkes Barre ("Roth Parcel"). In 1982, Roth entered into an installment sale agreement with the City of Wilkes-Barre Industrial Development Authority ("IDA"), by which Roth transferred title to the Roth Parcel to IDA and Roth retained equitable title. At the time, the Roth Parcel consisted of three separate lots known as Lots 27A, 27B, and 27C.

In 1988, Roth leased the entire Roth Parcel to Revel Railroad, Inc. ("Revel"). On July 24, 1989, Revel sublet a portion of the Roth Parcel, including Lot 27A, to Appellant Greco and his partners, the Kornfelds. In turn, on August 17, 1990, Appellant Greco and the Kornfelds sublet Lot 27A to McDonald's ("McDonald's Parcel") via an unrecorded ground lease ("McDonald's Sublease").

In the McDonald's Sublease, Appellant Greco and the Kornfelds, as landlords, agreed that no one (except for the existing owner of a restaurant)

---

[4] The trial court heard extensive testimony at trial and the parties rely on some of that testimony in their arguments. However, Appellants in essence rely on only two documents to challenge the trial court's decision: the McDonald's Sublease and the NDAA. Since the relevant provisions in these documents are clear and unambiguous, the testimony about the parties' intentions when entering into these agreements is irrelevant to our analysis.

would operate a hamburger restaurant on any other portion of the Roth Parcel.

("Lease Restriction").[5] In particular, the relevant provision provides:

> **Landlord covenants and agrees (i) that no other property** (other than the Demised Premises) or the Diner located on Landlord's property adjacent to the Demised Premises now or hereafter owned, leased or controlled, directly or indirectly, by Landlord . . . **adjacent or contiguous to the Demised Premises** . . . **shall, during the term of this Lease** and any extensions thereof, be **leased, used or occupied as a restaurant. The term Restaurant as used in this contract shall mean a food service establishment of any type delivering 25% or more of its gross annual sales from the sale of hamburgers, ground beef products and French fries, including but not limited to Burger King, Wendy's, Jack-in-the Box, Burger Chef, Hardee's, White Castle and Roy Rogers.**
>
> * * *
>
> **It is mutually agreed that covenants set forth in i and ii, above, shall run with the land.**

McDonald's Sublease, paragraph 4G (emphasis added). It must be emphasized that Appellant Greco and the Kornfelds did not own or hold any interest in the remaining portion of the Roth Parcel when they "covenant[ed] and agree[d]" that no entity would operate a hamburger restaurant on the remaining portion of the Roth Parcel.

---

[5] The Lease Restriction prohibits the operation of a hamburger restaurant on a parcel of land that is "adjacent or contiguous" to the McDonald's Parcel. Since our courts have interpreted the term "adjacent or contiguous" broadly and do not require that the burdened property physically touch the other property, for convenience, we will treat "adjacent or contiguous" to mean any other portion of the Roth Parcel. *See*, *e.g.*, *Great A. & P. Tea Co. v. Bailey*, 220 A.2d 1, 3 n.3 (Pa. 1966) (defining "adjacent" as meaning "[n]ot distant or far off: nearby but not touching.").

- 4 -

On August 20, 1990, McDonald's and IDA executed a Non-Disturbance and Attornment Agreement ("NDAA"), which the parties recorded on April 17, 1991.[6] In the NDAA, IDA, as owner of the McDonald's Parcel, acknowledged that Appellant Greco and the Kornfelds had the right to execute and deliver the McDonald's Sublease and that McDonald's right to continue to possess the McDonald's Parcel would not be adversely affected by a dispute between IDA and Appellant Greco and the Kornfelds. NDAA, dated 8/20/19, at ¶ 1; R.R. at 640a. Importantly, the NDAA did not incorporate into it, let alone even mention or reference, the Lease Restriction.

Over the next several years, a series of transactions divided the entire Roth Parcel into six smaller lots, with the McDonald's Parcel renumbered as Lot 1. By 2016, Appellant TGRG owned McDonald's Parcel and Lot 2, and Appellee Market Square Properties owned Lots 3, 4, 5, and 6.

Appellee soon thereafter entered a Letter of Intent with a third party to operate a Burger King restaurant on Lot 3 ("Burger King Parcel").

To resolve the issue of whether Lease Restriction prevents the operation of the Burger King restaurant on the Burger King Parcel, Appellees filed the instant declaratory judgment and quiet title action on December 19, 2016. Appellants filed their own action against Appellees on December 20, 2016,

---

[6] On the same dates, McDonald's, IDA and Revel entered into a NDAA with identical language. That NDAA was also recorded on April 10, 1991.

seeking a declaratory judgment and permanent injunction. The trial court consolidated the cases for trial.

The trial court conducted a bench trial on October 7, 2019. At the conclusion of trial, the court held that the Lease Restriction is not valid and quieted title to the Burger King Lot and Lots 4, 5, and 6 in Appellees' favor.

Appellants timely filed a Post-Trial Motion, which the court denied on August 14, 2020. Appellants timely filed a Notice of Appeal. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

> 1. Whether the trial court erred as a matter of law in determining [that] the Lease [Restriction] is unenforceable by finding the IDA did not consent to the Lease [Restriction], Market Square did not have notice of the Lease [Restriction] and the Market Square Parcel is not adjacent or contiguous to the McDonald's Parcel.
>
> 2. Whether the trial court erred as a matter of law in determining, either explicitly or implicitly, that the Lease [Restriction] is unenforceable because it is a personal covenant rather than a covenant that runs with the land.

Appellants' Br. at 5.

On appeal from a non-jury trial verdict, this Court's role is "to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." ***J.J. DeLuca Co. v. Toll Naval Assoc.***, 56 A.3d 402, 410 (Pa. Super. 2012) (citation omitted). We consider the evidence in a light most favorable to the verdict winner and give the trial judge's findings of fact the same weight and effect on appeal as a jury verdict. ***Id.*** "We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or

if its findings are premised on an error of law." ***Rissi v. Cappella***, 918 A.2d 131, 136 (Pa. Super. 2007) (citation omitted).

The premise of Appellants' challenge to the trial court's decision is that IDA agreed in the NDAA to a restrictive covenant that would encumber the remaining portion of the Roth Parcel with the Lease Restriction. Appellants' Br. at 14. To support this position, Appellants rely on the following provision: "The Fee Owner consents to the execution and delivery of the [McDonald's Sublease]." ***Id.*** at 24. Thus, the threshold issue before us is whether this provision establishes that IDA created or intended to create a restrictive covenant on the remaining portion of the Roth Parcel.

As an initial matter, a restrictive covenant is a type of servitude, a legal device that creates a right or an obligation that runs with land or an interest in land. Restatement (Third) of Property § 1.1 (2000).  To create a restrictive covenant, a property owner must "enter[] into a contract or make[] a conveyance **intended to create a servitude** that complies with § 2.7 (Statute of Frauds)[.]" Restatement (Second) of Property § 2.1 (2000) (emphasis added). In other words, "a restrictive covenant is a restriction in an instrument relating to real estate by which **the parties pledge** that something will not be done." ***Doylestown Tp. V. Teeling***, 635 A.2d 657, 661 (Pa. Commw. 1993) (emphasis added). Thus, one of the foundational requirements for creating a restrictive covenant is for the property owner to execute a document in which the property owner explicitly encumbers his

property with the restrictive covenant or that it can be inferred from the words of the document that the property owner implicitly intended to do so.

In reviewing the NDAA to determine whether IDA created or intended to create a restrictive covenant, we are guided by the following principles:

> The intent of the parties is to be ascertained from the document itself where its terms are clear and unambiguous, and only where an ambiguity exists is parole evidence admissible to explain or clarify the ambiguity, whether that ambiguity is created by the language of the instrument itself or by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of more than one construction and is capable of being understood in more than one sense. Whether an ambiguity exists is a question of law as is the interpretation of the contract.

*J.C. Penny Co. v. Giant Eagle, Inc.*, 813 F. Supp. 360, 367 (W.D. Pa. 1992) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 389-90 (Pa. 1986).

In this case, Appellants argue that the language in the NDAA demonstrates IDA's intention to create a restrictive covenant on the remaining portion of the Roth Parcel. Appellants' Br. at 23-24. As stated above, Appellants rely on this provision: "The Fee Owner consents to the execution and delivery of the [McDonald's Sublease]." *Id.*

The trial court rejected Appellants' arguments, finding that "none of the non-disturbance and attornment agreements make any reference to the Covenant Not to Compete, the Lease [Restriction] or to any restrictions on the Roth Parcel." Tr. Ct. Op. at 35.

We agree. It is undisputed that IDA did not explicitly agree in the NDAA to create a restrictive covenant that would encumber the remaining portion of

the Roth Parcel with the Lease Restriction. Additionally, it is unreasonable to infer from this provision that IDA implicitly agreed to create a restrictive covenant. This provision does not mention the Lease Restriction or the remaining portion of the Roth Parcel, let alone words demonstrating IDA's intention to create a restrictive covenant. At most, this provision of the NDAA merely establishes that IDA agrees that Greco and the Kornfelds are authorized to enter into the McDonald's Sublease. It is beyond cavil that the mere mention of another document in the NDAA is not sufficient to create, either explicitly or implicitly, a restrictive covenant on another property.

A review of the NDAA as a whole supports this conclusion. The NDAA merely preserves McDonalds' rights under the McDonald's Sublease if the lease between IDA and Revel terminates or the sublease between Revel and Appellant Greco and the Kornfelds terminates. NDAA, dated 8/20/90; R.R. at 640a-649a. It does no more than this and certainly does not establish that IDA is creating a restrictive covenant on another property.

Furthermore, if IDA intended to create a restrictive covenant, it could have done so by including language that specifically encumbered the remaining portion of the Roth Estate. It chose not to do so. To accept Appellants' argument requires us to rewrite this provision and add a sentence that the Fee Owner agrees to create a restrictive covenant on the remaining portion of the Roth Parcel that encumbers that property with the Lease Restriction. We cannot rewrite a contractual provision and will not do so.

Appellants further argue that in addition to the language in the NDAA, the testimony at trial demonstrated that IDA intended to encumber the remaining portion of the Roth Estate with the Lease Restriction. Appellants' Br. at 22. Since the provision upon which Appellants rely does not mention the Lease Restriction or explicitly or implicitly provide for the creation of a restrictive covenant, this provision clearly and unambiguously does not create a restrictive covenant and the testimony upon which Appellants rely is irrelevant.

Thus, the foundation of Appellant's challenge to the trial court's decision fails and we conclude that the trial court properly concluded that IDA did not create or intend to create a restrictive covenant on the remaining portion of the Roth Parcel when it executed the NDAA.

Similarly, whether Appellees had notice of the Lease Restriction when it purchased the Roth Parcel is equally irrelevant. The threshold issue is whether the NDAA demonstrates that IDA either explicitly or implicitly agreed to encumber the remaining portion of the Roth Estate with the Lease Restriction. As discussed above, it does not. As such, IDA did not encumber the Roth Parcel. There is no legal authority, and Appellants have cited none, that would establish that a restrictive covenant is created on a property when a prospective purchaser of that property has notice that a third party unsuccessfully attempted to encumber the property with a restrictive covenant.

Appellants further argue that the trial court erred in not determining whether the Lease Restriction is a covenant that runs with the land. As discussed above, the NDAA does not create a restrictive covenant of any type, so Appellants' argument fails.

Appellants finally argue that when IDA and the Roth Estate terminated the Installment Sale Agreement, IDA's lack of consent became moot. Appellants' Br. at 25-26. In other words, Appellants are arguing that the termination of the Installment Sales Agreement resulted in the creation of a restrictive covenant on the remaining portion of the Roth Parcel. As discussed above, since the NDAA does not create a restrictive covenant, the termination of the Installment Sale Agreement is irrelevant. Appellants also fail to point to any provision in the Installment Sale Agreement or the termination of the Installment Sale Agreement that demonstrate IDA's intent to create a restrictive covenant. Without a contractual provision establishing IDA's intent to create a restrictive covenant on the remaining portion of the Roth Parcel, this argument fails as well.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2021