J-A03022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FEDERAL REALTY INVESTMENT TRUST, F/K/A FEDERAL REALTY OP, L.P. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| RAO 8, INC., RADHA M. RAO AND MITAL RAO | : : : | No. 2156 EDA 2022 |
| Appellants | : | |

Appeal from the Order Entered July 25, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 220302719

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED JULY 19, 2023**

Rao 8, Inc., Radha M. Rao, and Mital Rao (collectively "Appellants") appeal from the denial of their petition to open a confessed judgment obtained by Federal Realty Investment Trust, f/k/a Federal Realty OP, L.P. (hereinafter "Landlord"). We affirm.

The relevant factual and procedural history underlying this matter is not in dispute. In 2010, Rao 8, Inc. (hereinafter "Tenant") assumed a commercial lease agreement ("Lease") for premises located in a shopping center in

_____

[*] Former Justice specially assigned to the Superior Court.

Northeast Philadelphia.[1]  **See** Lease, 1/27/10; **see also** Lease Assignment and Assumption Agreement, 9/23/10.  The Lease permitted Tenant to operate a Dunkin Donuts on the premises for a term of ten years, ending on September 30, 2020.  The Lease provided Tenant with an option to extend the Lease term for an additional five years if Tenant provided Landlord with "Notice" of its intent to exercise the option "at least twelve (12) months prior to the expiration of the original Term" (*i.e.*, not later than September 30, 2019).  **See** Lease, 1/27/10, at Addendum V.  The Lease further specified that any "Notice" was required to be "in writing . . . and served by (i) nationally recognized overnight courier or (ii) registered or certified mail return receipt requested."  **See id**. at § 17.01.  The Lease additionally provided that, if Tenant exercised the option to extend the Lease until 2025, the monthly rent for the premises would increase incrementally over the five-year option period according to a specified fee schedule.  **See id**. at Addendum V.  However, if Tenant did not timely exercise the option to extend, Tenant's right to exercise the option would expire and the Lease would terminate at the end of the

---

[1] The original Lease was entered on January 27, 2010, between Landlord and Sai Sidhdhy Corp.  However, on September 23, 2010, the Lease was assigned to Rao 8, Inc., which assumed all responsibilities under the Lease.  In connection with the assignment, Radha M. Rao and Mital Rao ("Guarantors ") agreed to assume the guaranty agreement ("Guaranty") executed in connection with the Lease.  **See** Guaranty, 1/27/10; **see also** Lease Assignment and Assumption Agreement, 9/23/10.

original term. *See id*. (providing that "[i]f any such option is not timely exercised, Tenant's right to extend shall expire and the Lease shall terminate at the end of the original Term"). The Lease further provided that Tenant must vacate the premises upon the expiration of the Lease term (*i.e.*, by September 30, 2020), and that any holdover occupancy of the premises would become a tenancy at will subject to a rental rate of one and one-half times the daily rent in the last year of the Lease term. *Id*. at §§ 3.01 (providing that the "Lease shall terminate on the Termination Date without the necessity of Notice from either Landlord or tenant. Upon the Termination Date, Tenant shall quit and surrender to Landlord . . . the Leased Premises . . ..");  3.02 (providing that "[i]f Tenant fails to vacate the Leased Premises on the Termination Date, . . . [o]ccupancy after the Termination Date ("Holdover Occupancy") shall be a tenancy at will, and shall be subject to . . . ("Holdover Minimum Rent") [which, for each day that Tenant holds over,] shall equal one and one-half (1-1/2 times the daily Minimum Rent payable in the last Lease Year").[2]

On September 13, 2019, Tenant sent Landlord, via regular mail, a letter indicating Tenant's intent to exercise the option to extend the Lease. Tenant

---

[2] Pursuant to the Lease, the monthly rent due by Tenant in the last year of the Lease term was a base cost of $9,300, plus additional associated costs, for a total of $10,016.65. *See* Lease, 1/27/10, at § 1.01(F), (G), (H), (I).

also indicated in the letter that it wished to enter negotiations with Landlord to extend the Lease term beyond the five-year option period (*i.e.*, for the period after the extension ended in 2025) because it wanted to undertake renovations on the premises. Neither Tenant nor Landlord mentioned the September 2019 letter in subsequent communications, nor did they discuss any extension of the Lease.[3]

In January 2020, Landlord sent Tenant a proposal for a lease renewal commencing on October 1, 2020. The proposal required the acceptance and signature of Tenant, and expressly stated that the proposal was only valid for ten business days. Tenant did not accept the proposal for a lease renewal. On September 30, 2020, the Lease term expired. Although Landlord and Tenant continued to negotiate in the hopes of entering a lease renewal, no agreement was ever reached, and no lease renewal was ever executed by the parties. Tenant did not vacate the premises.[4]

_____

[3] In their brief, Appellants conflate a lease "extension" with a lease "renewal." Whereas the Lease provided Tenant with an option to unilaterally "extend" the Lease for an additional five-year term subject to a rent schedule specified in the Lease (provided that the option was exercised by Tenant in the manner and time-period set forth in the Lease, and that Tenant was not in default), a Lease "renewal" would require the parties to negotiate and execute an entirely new lease renewal agreement.

[4] Over the course of the ten-year Lease term, Tenant paid its monthly rent obligations using an automatic payment system whereby Landlord electronically deducted payments each month from Tenant's bank account. *(Footnote Continued Next Page)*

In November 2021, Landlord sent Tenant a notice of termination, indicating that Tenant was in default under the Lease for failure to vacate the premises, and demanded that Tenant surrender the premises by December 31, 2021. Landlord also requested payment of past due rent and utility costs and reserved its right to collect holdover rent pursuant to the terms of the Lease. In December 2021, Landlord sent a second notice of termination and third notice of termination to Tenant. In response, Tenant paid Landlord past due rent and utility costs, but failed to pay holdover rent amounts or vacate the premises.

In March 2022, pursuant to the terms of the Lease and Guaranty, Landlord filed a complaint in confession of judgment against Tenant and Guarantors seeking recovery of the premises as well as unpaid holdover rent, interest, and attorney's fees in the amount of $101,553.27. *See* Lease, 1/27/10, at § 16.02(D)(iii); Guaranty, 1/27/10, at W. The Lease and Guaranty also provided authorization for an attorney to appear in the action on behalf of Tenant and Guarantors and to confess judgment in favor of Landlord for these amounts. *Id*. In accordance with such terms, Tenant and

---

After the Lease term expired, Landlord continued to electronically deduct monthly payments from Tenant's bank account in the same amount as was due in the final year of the Lease term.

Guarantors confessed judgment in ejectment and for damages in the amount of $101,553.27.

In April 2022, Tenant and Guarantors filed a petition to open the judgment. Landlord opposed the petition. On July 25, 2022, the trial court entered an order denying the petition to open and ordering Tenant to vacate the premises. Tenant and Guarantors filed a motion for reconsideration which the trial court denied on August 15, 2022. Tenant and Guarantors filed a timely notice of appeal.[5]

Appellants raise the following issue for our review: "Whether the trial court erred in failing to apply the directed verdict standard to Appellants' petition to open confessed judgment by failing to view all evidence in the light most favorable to Appellants and reject all adverse inferences of [Landlord]?" Appellants' Brief at 6 (unnecessary capitalization omitted).

In reviewing a trial court's order denying a petition to open a confessed judgment, we employ the following standard of review: "[a] petition to open judgment is an appeal to the equitable powers of the court. As such[,] it is committed to the sound discretion of the hearing court and will not be

---

[5] The trial court did not order Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In *lieu* of authoring a Rule 1925(a) opinion, the trial court indicated that the reasons for its order denying Appellants' petition to open can be found in the trial court's July 25, 2022 opinion. **See** Pa.R.A.P. 1925(a)(1).

disturbed absent a manifest abuse of discretion." ***PNC Bank v. Kerr***, 802 A.2d 634, 638 (Pa. Super. 2002) (citation omitted).

> A court should open a confessed judgment if:
>
> the petitioner promptly presents evidence on a petition to open which in a jury trial would require that the issues be submitted to the jury. A petitioner must offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question. In determining whether sufficient evidence has been presented, [courts should] employ the same standard as in a directed verdict: [the trial court must] view all the evidence in the light most favorable to the petitioner and accept as true all evidence and proper inferences therefrom supporting the defense while . . . reject[ing] adverse allegations of the party obtaining the judgment.

***Stahl Oil Co., Inc. v. Helsel***, 860 A.2d 508, 512 (Pa. Super. 2004) (internal citations omitted).

A lease is a contract and is to be interpreted according to contract principles. ***See Hutchison v. Sunbeam Coal Corp.***, 519 A.2d 385, 389 (Pa. 1986). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. ***Id***. at 390. The law will not imply a different contract than that which the parties have expressly adopted. ***Id***. at 388.

Appellants contend that the trial court abused its discretion by finding in favor of Landlord on the questions of whether it received the September 2019 letter, and whether that letter sufficiently provided notice to Landlord that Tenant intended to exercise its option to extend the Lease. Appellants

- 7 -

argue that, in resolving these questions, the trial court failed to view the evidence in the light most favorable to Tenant. Specifically, Appellants contend that, although the trial court acknowledged that Tenant sent Landlord the September 2019 letter, the court credited Landlord's claim that it did not receive the letter. Appellants claim that Landlord's conduct in negotiating issues raised in the September 2019 letter indicate that Landlord actually received the letter. Appellants maintain that, if the trial court had made reasonable inferences in favor of Tenant, the court would have inferred from the ongoing discussions regarding a Lease renewal that a lease extension was already agreed upon by the parties.

Appellants additionally maintain that, although the September 2019 letter was sent by regular mail and not by a recognized overnight courier, the manner of service mandated by the Lease "constituted nothing more than a technical obligation on Tenant, which is insufficient to be considered a material breach of the [L]ease. . .." Appellants' Brief at 16 (unnecessary capitalization omitted).

Finally, Appellants contend that the trial court should have inferred that "Tenant was merely a tenant in its extended lease period, and not a 'holdover tenant' that was required to pay holdover tenant rent." Appellants' Brief at 13. Appellants point to the fact that, after the Lease term expired in September 2020, Landlord continued to deduct from Tenant's bank account

the amount of monthly rent under the expired Lease, rather than the amount of holdover rent provided by the Lease. Appellants argue that the trial court should have inferred from these withdrawals that Landlord did not deem Tenant to be a holdover tenant. Appellants further claim that, based on Landlord's failure to send any default notice to Tenant for more than one year after the Lease term expired, the trial court should have inferred that Landlord accepted Tenant's exercise of its Lease renewal option.

The trial court explained the basis for its denial of the petition to open the confessed judgment, as follows:

> Tenant argues that the confessed judgment should be opened because it exercised the option to extend the [L]ease term by letter dated September 13, 2019. While Tenant did send a letter notifying Landlord of its intent to exercise the option in the Lease, the notice was not sent as required by the Lease agreement, that is by nationally recognized overnight courier, or registered or certified mail return receipt requested. . . . [T]he evidence demonstrates that the option to extend was never exercised. Landlord sent Tenant a Lease renewal proposal in January 2020, which required Tenant's acceptance. If the option to [extend] was [properly exercised] . . ., there would have been no need for Landlord to send Tenant a proposal for a Lease renewal for the premises with an acceptance requirement. Similarly, if the option to extend the Lease was properly exercised . . ., there would have been no need to engage in negotiations for a new lease. Unfortunately, while the parties tried to reach an agreement, there were too many challenges[,] as acknowledged by Tenant on September 24, 2020:
>
> > . . . we also appreciate your help in trying to see if a deal can be made, but we also realize that this is not an easy task. If you feel that this is a difficult request to accomplish, please let us know as currently, we have marked this location for closing by the end of the

current term. We don't want to change all our subsequent plans for closure, as there are many steps that have to be accomplished and require a great deal of planning. . . ..

The fact that Tenant continued to pay rent and Landlord continued to accept rental payments from Tenant after the Lease agreement terminated does not evidence an extension of the existing [L]ease or the creation of a new lease. After the Lease for the premises terminated, Tenant became a holdover tenant by operation of § 3.02 of the Lease agreement and Landlord was entitled to collect [holdover] rent.

. . . Tenant, per the Lease agreement, was required to pay Landlord "daily minimum rent for each day that Tenant holds over ('Holdover Minimum Rent')" in an amount equal to one and one-half (1-1/2) times the daily Minimum Rent payable in the last Lease year. Tenant only paid sums equivalent to minimum rent it paid to Landlord during the Lease term. Tenant did not pay any Holdover Minimum Rent and therefore is in default.

Trial Court Opinion, 7/25/22, at 6-8 (footnotes and unnecessary capitalization omitted).

Based on our review, we discern no manifest abuse of discretion by the trial court in denying the petition to open. Although Appellants petition was promptly filed, they failed to present the trial court with sufficient evidence to raise a jury question as to whether Tenant properly exercised its option to extend the Lease. Appellants conceded that Tenant never sent any notice purporting to exercise the option to extend which complied with the strict notice requirements specified in the Lease. Thus, even if the trial court had inferred that Landlord received the September 2019 letter, the letter was undisputedly non-compliant with the express notice provisions of the Lease

and, therefore, insufficient to invoke the option to extend.[6] **See Hutchison**, 519 A.2d at 388 (holding that, where the parties have expressly adopted a contract, the law will not imply a different one). Accordingly, having failed to properly exercise the option to extend the Lease, Tenant's right to exercise its option to extend expired on October 1, 2019. **See** Lease, 1/27/10, at Addendum V.

Moreover, the fact that the trial court credited Tenant's assertion that it sent the September 2019 letter does not warrant a corresponding inference that Landlord received the letter. Indeed, the trial court determined that Appellants failed to proffer any evidence that the September 2019 letter was received by Landlord. As aptly noted by the trial court, if Tenant had properly exercised its option to extend the Lease for a five-year term ending in September 2025, there would have been no need for Landlord to send Tenant a proposal in January 2020 for a lease renewal commencing on October 1, 2020. Nor would there have been any reason for Tenant to have engaged in any negotiations for a proposed lease renewal commencing on October 1, 2020 if, in fact, Tenant had properly exercised its option to extend the Lease

---

[6] Landlord also maintains that, because Tenant was in default at the time it purportedly sent the September 13, 2019 letter, Tenant was unable to exercise its option to extend. **See** Landlord's Brief at 3-4. However, Landlord has failed to develop this argument or explain how Tenant was in default in September 2019.

to 2025. Nor does the fact that the September 2019 letter expressed Tenant's interest in discussing a lease renewal beyond the option period (*i.e.*, after 2025) warrant an inference that the parties' discussions regarding a lease renewal commencing on October 1, 2020, indicate that Landlord received the September 2019 letter.

Further, the fact that Landlord did not immediately issue a default or termination notice and continued to collect rent from Tenant's bank account after the Lease term expired, does not, without more, constitute a renewal of the Lease. **See Clairton Corp. v. Geo-Con, Inc.**, 635 A.2d 1058, 1060 (Pa. Super. 1993) (holding that "mere continuance in possession and payment of rent does not **of itself** constitute a renewal of the lease with all its provisions") (emphasis in original). Indeed, where a tenant remains in possession of realty after the expiration of the lease term, and during a period in which the tenant and the landlord are negotiating for a new lease, it is uniformly held that the landlord's acceptance of rent for this period is not a manifestation of the landlord's consent to an extension or renewal of the lease. **See id**. (citing 45 A.L.R.2d 841, § 6). Thus, the fact that Landlord did not immediately issue a default or termination notice[7] and continued to collect rent from Tenant after

---

[7] Moreover, the Lease specifically provided that the Lease term would expire on the termination date without notice to Tenant. **See** Lease, 1/27/10, at § 3.01 (providing that "[t]his lease shall terminate on the Termination Date without the necessity of Notice from either Landlord or Tenant").

the lease term expired does not evidence either that the Lease was extended or that the Lease was renewed.

Finally, Appellants concede that no lease renewal was ever executed by the parties. Therefore, the clear and unambiguous terms of the Lease, which Tenant assumed, and the Guaranty, which Guarantors assumed, control the rights and obligations of the respective parties and require that Tenant and Guarantors pay holdover rent and related costs as set forth in the confessed judgment. *See Hutchison*, 519 A.2d at 390. As we discern no manifest abuse of discretion by the trial court in determining that Appellants failed to present evidence sufficient to create a jury question on any issue, we affirm the trial court's order denying Appellants' petition to open the confessed judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2023

- 13 -